107 N.J. Super. 390 (1969)
258 A.2d 711
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDWARD A. BURT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1969.
Decided November 14, 1969.
Before Judges SULLIVAN, CARTON and HALPERN.
*391 Mr. Arthur Penn, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. I. Michael Heine, Assistant Prosecutor, argued the cause for respondent (Mr. A. Donald Bigley, Camden County Prosecutor, attorney).
The opinion of the court was delivered by SULLIVAN, P.J.A.D.
Defendant was convicted of murder in the second degree in the shooting death of Robert (Shorty) Owens. This appeal, prosecuted on his behalf, does not challenge the sufficiency and adequacy of the State's proofs. Rather, it is contended that numerous prejudicial trial errors were committed which deprived defendant of his right to a fair trial and require that the judgment of conviction be set aside and a new trial granted.
The State's witness Everline Adams testified that she was a long-time friend of Owens and on the day in question left her home in Philadelphia to visit him. When she arrived at Owens' home in Camden, she found Owens and defendant sitting at the dining room table. The three sat around the table for about an hour talking, drinking and listening to records.
Mrs. Adams then went to the bedroom on the second floor. While there she heard the sound of a scuffle, a groan and a shot from a gun. She heard another shot and heard someone fall to the floor. Defendant then came upstairs to the bedroom with a gun in his hand and told Mrs. Adams that he was going to kill her just like he killed Owens. After taking five dollars from her he raped her. He then forced her to accompany him to a car parked about three blocks away from the house. Defendant drove her around for a while and ultimately let her out at a bus station.
Later that same night a police officer of the Borough of Clementon, investigating a report of a broken window at premises of the Trio Tire Co., found defendant hiding in a *392 stack of tires. A gun, later identified as the murder weapon, was in defendant's right front pocket.
Defendant's first point is that his constitutional right to remain silent was eroded by the following trial incident.
After the State had rested its case, the defendant took the witness stand in his own behalf and testified that the shooting death of Owens was accidental. His testimony was to the effect that he had been drinking with Owens, that an altercation developed, and that Owens took a gun out of his pocket and pointed it at defendant. While struggling with Owens in an effort to take the gun away from him, the gun was accidentally discharged twice and Owens was killed. On cross-examination, defendant was asked if he had ever told the police that the shooting was accidental to which he replied "no sir."
The following day counsel for defendant told the court that the foregoing cross-examination might have created the impression in the minds of the jury that defendant was under some obligation to say something to the police. He therefore asked the court to instruct the jury at that time that defendant had no obligation to tell the police anything.
In the colloquy which followed the court stated that the cross-examination was proper and that no curative instruction was needed. The trial judge said that in his charge to the jury at the end of the case, he would appropriately charge the jury that "no burden exists upon the defendant."
At the conclusion of the trial the prosecutor, in his summation, referred to the credibility of defendant's story as follows:
He never told the police he accidentally shot Shorty Owens, never, at least up until the time he was lodged in Camden County Jail, and yet he is here, sitting here today asking you to believe this story. If this was an accidental shooting why didn't he go and say "I just accidentally shot somebody."
Defendant's argument is that the aforesaid cross-examination and prosecutor's comments sought to draw the inference *393 that the story of an accidental shooting had been fabricated after the event. This, argues defendant, was a violation of his constitutional right to remain silent, since he was under no duty or obligation to give any explanation to the police.
We conclude that no violation of defendant's constitutional rights was involved. The thrust of the prosecutor's remarks was not that defendant had remained silent after he had been arrested but rather that if the shooting had been accidental, as defendant claimed, the normal reaction would have been to so indicate to the police at the earliest opportunity. This was legitimate argument for the State to make.
The State, in its main case, made no reference whatever to defendant's remaining silent after he had been arrested and charged with the murder. However, when defendant waived his right to remain silent, took the witness stand in his own defense, and for the first time said that the shooting had been accidental, he thereby subjected himself to cross-examination as to the credibility of his story. This involved consideration of whether the story had been fabricated after the shooting. Defendant's failure to tell anybody at the time that the shooting of Owens was accidental was relevant to the issue of the credibility of his courtroom testimony and was permissible. Sharp v. United States, 410 F.2d 969 (5 Cir.1969); United States v. White, 377 F.2d 908 (4 Cir.1967), cert. den. 389 U.S. 884, 88 S.Ct. 143, 19 L.Ed.2d 180 (1967); May v. State, 211 So.2d 845 (Miss. Sup. Ct. 1968); State v. Zappia, 8 Ariz. App. 549, 448 P.2d 119 (1969); cf. State v. Fioravanti, 46 N.J. 109, 116-118 (1965), cert. den. 384 U.S. 919, 86 S.Ct. 1365, 16 L.Ed.2d 440 (1966). But see: United States v. Brinson, 411 F.2d 1057 (6 Cir. 1969). The balance of the Court's opinion dealing with additional points raised by defendant is omitted from publication.