492 P.2d 36

The STATE of Arizona, Appellee,

v.

William GREER, Appellant.

No. I CA–CR 35I.

Court of Appeals of Arizona,
Division 1.

Dec. 30, 1971.

Rehearing Granted April 27, 1972.
See 496 P.2d 152.

Gary K. Nelson, Atty. Gen., by William
P. Dixon, Asst. Atty. Gen., Phoenix, Joel
Finer, Michael Meehan, Carol Druke, College of Law, University of Arizona, of
counsel, Tucson, for appellee.

Ross P. Lee, Maricopa County Public
Defender, by William Carter, Deputy
Public Defender, Phoenix, for appellant.

HATHAWAY, Judge.

Appellant-defendant, William Greer,
(hereinafter defendant), was convicted of
burglarizing the El Rancho warehouse located at 35th Avenue and Buckeye Road in
Phoenix, Arizona. Defendant was convicted of first-degree burglary and was
sentenced to a term of from one to five
years.

Defendant was positively identified by
two employees of El Rancho who, during
their 10 to 20 minute chase of defendant,
had ample opportunity to observe and identify him. Their vehicles were frequently
parallel and at times no more than a few
feet apart. Descriptions given by both witnesses were very close to defendant's actual
age, height and weight.

Defendant presented alibi evidence
through his own testimony and that of
Ruby Robinson, with whom he claimed to
have been at the time of the burglary. Defendant's story was marred by inconsistencies. Ruby gave one address for her
mother's house, where they supposedly
spent the day, and defendant gave a very
different address several blocks away.
Ruby first said she never left defendant
during the day and then she testified that
she left him for a short period to go to her
stepmother's house. Defendant's testimony
is full of contradictions and his story regarding his activities between 5:00 p. m.

and 7:00 p. m. is so full of improbabilities as to be incredible.

The issue raised on appeal arises out of the county attorney's cross-examination of defendant as follows:

"Q Did you tell the police about Ruby Robinson?

A No, I didn't.

Q You never told them, you never said a word to them, did you?

A No.

Q You never told them you knew her at any time?

A I never spoke to any police to tell them anything.

Q Were you ever arrested?

A I was arrested on the warrant, sure.

Q And you didn't care to volunteer any statements that would exonerate yourself?

A No.

MR. HYDER: I don't have any further questions."

At the time these questions were asked, the defense made no objection nor a motion to strike. Defendant's motion for a new trial specified no grounds and made no reference to the above questions.

The question now before this court is whether reversible error was committed in permitting the county attorney to cross-examine defendant regarding his silence while in custody.

■ Defendant bases his allegation of error upon the proposition that the state may not comment upon the exercise by an accused of his constitutional right not to testify in his own defense. This is established by Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Defendant relies upon the rule, derived from *Griffin,* that the state may not comment upon extra-judicial admissions by silence which occur during a period of custody, correctly citing State v. Simoneau, 98 Ariz. 2, 401 P.2d 404 (1965); United States v. Arnold, 425 F.2d 204 (10th Cir. 1970); United States v. Nolan, 416 F.2d 588 (10th Cir. 1969), cert. denied, 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1970). To allow such comment would, of course, impose a penalty upon the exercise of a constitutional privilege. We also agree with the rule stated by defendant that merely introducing admissions by silence during custodial periods, *for the purpose of proving guilt,* violates the self-incrimination privilege, correctly citing State v. McAlvain, 104 Ariz. 445, 454 P.2d 987 (1969), cert. denied, 396 U.S. 1023, 90 S.Ct. 597, 24 L. Ed.2d 516 (1970); State v. Villalobos, 6 Ariz.App. 144, 430 P.2d 723 (1967); United States v. Pearson, 344 F.2d 430 (6th Cir. 1965).

Our court has no quarrel with the law relied upon by defendant but believe the law cited to be inapplicable to the facts before us on appeal.

■ Defendant had every right to remain silent while in custody and at the trial but upon voluntarily taking the stand in his own behalf he waives his privilege of silence at least to the extent of legitimate cross-examination. Defendant's silence was not used against him in the prosecution's main case to establish guilt but was brought out in cross-examination for the purpose of impeaching his credibility with respect to his testimony concerning an alibi. To allow the defendant to tell his own story and then claim a right of silence to prevent cross-examination would be absurd. The case of State v. Zappia, 8 Ariz.App. 549, 448 P.2d 119 (1968), review denied, 1969, cert. denied, 396 U.S. 861, 90 S.Ct. 132, 24 L.Ed.2d 113 (1970), decided by this court is determinative.

In *Zappia,* defendant testified that he was mistakenly apprehended at the scene of an attempted auto theft, and that he was in the area for other legitimate reasons. The prosecution *conducted a cross-examination designed to impeach defendant* by asking him whether the story was told to policemen who took him into custody at the scene. Our court there concluded that:

" . . . The story that the defendant told at the time of trial . . . is one

158

that would, in the normal course of human events, have been immediately blurted out at the scene of this 'mistaken' apprehension, if the apprehension were indeed mistaken." 8 Ariz.App. at 552, 448 P.2d at 122.

It seems equally likely that the defendant in the case at bar would have "blurted out" his story at the time he was mistakenly taken into custody, in order to exonerate himself.

Defendant attempts to distinguish *Zappia* by arguing that: (1) peculiar circumstances in *Zappia* created a duty to speak, and (2) Zappia's silence was prior to arrest and Greer's in the present case was post-arrest. Defendant's first argument we have already dismissed above by finding that the circumstances in the two cases are very similar regarding the motivation for defendant to tell his exonerating story.

Defendant's second point of distinction we find unimportant since the real factor of relevancy is not arrest but custody and the silence in both cases was during police custody when it would have been most reasonable to offer an explanation for the mistaken apprehension.

As we said before in *Zappia*, the defendant may waive his privilege against self-incrimination granted by the Fifth Amendment and by statute in Arizona (A.R.S. § 13–163), by taking the stand in his own behalf. Upon taking the stand, defendant has waived the privilege at least as to legitimate cross-examination regarding his story to the jury on direct examination. State v. Taylor, 99 Ariz. 85, 407 P.2d 59 (1965), cert. denied, 384 U.S. 979, 86 S.Ct. 1878, 16 L.Ed.2d 689 (1966). See also, Udall, Arizona Law of Evidence § 98 at 160 (1960); 8 Wigmore, Evidence § 2276 at 459 (McNaughton rev. 1961).

In further support of this partial waiver of the privilege with regard to cross-examination, appellee cites several recent decisions by courts of our sister states. In State v. Burt, 107 N.J.Super. 390, 258 A.2d 711 (1969), the defendant who took the stand in his own behalf was held subject to cross-examination as to the credibility of his story. The principle was also supported in Johnson v. People, 473 P.2d 974 (Colo. 1970), and State v. Robideau, 70 Wash.2d 994, 425 P.2d 880 (1967).

Appellant's reply brief cites Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904 (1967), for its excellent discussion of the fallacies of the "tacit admission" rule. The Pennsylvania court overruled its prior case of Commonwealth v. Vallone, 347 Pa. 419, 32 A.2d 889 (1943), which had approved the rule and concluded that the rule was founded on "a wholly false premise." The rule stated in *Vallone* was that: " . . the statement [of another] and the fact of his [accused's] failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made." We certainly agree with their court's criticism of this rule and agree with appellant that such a rule has been prohibited by Griffin v. California, supra; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964), and cases following. However, the situation before this court does not fall within the "tacit admission" rule.

In the case at bar the prosecution introduced no evidence of defendant's silence in its main case. The only reference to defendant's silence was indirectly made during cross-examination when the purpose of the questions was to cast doubt on defendant's credibility and to suggest the recent fabrication of his story. The state made no reference to the defendant's silence at any time in its argument.

We find the case at bar to be most closely analogous to *Zappia* and reaffirm our position in that case that once the defendant takes the stand he is subject to cross-examination and it is certainly within legitimate cross-examination to inquire as to whether the defendant's story was recently contrived.

Affirmed.

HOWARD and HAIRE, JJ., concur.
NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.